```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

**United States of America, et al.**

    v.                                    Case No. 09-cv-283-PB
                                              Opinion No. 2012 DNH 021
**City of Portsmouth, New Hampshire**


                         **MEMORANDUM AND ORDER**


   The United States has filed a motion to modify a consent decree that addresses the City of Portsmouth's failure to abide by the Clean Water Act and the New Hampshire Water Pollution and Waste Disposal Act.  All of the parties to the consent decree support the proposed modification but the Conservation Law Foundation ("CLF") has intervened and filed an objection.  In this Memorandum and Order, I explain why I overrule CLF's objection and approve the proposed modification to the consent decree.


                         **I.  BACKGROUND**

**A.   The Complaints**

   On August 8, 2009, the United States filed a complaint alleging that the City of Portsmouth ("Portsmouth") violated several sections of the Clean Water Act ("CWA"), 33 U.S.C. §

1251, et seq.  Doc. No. 1.  On September 9, 2009, New Hampshire intervened in the action and filed a complaint alleging that Portsmouth violated the New Hampshire Water Pollution and Waste Disposal Act, N.H. Rev. Stat. Ann. § 485-A:13 (2013).  Doc. No. 4.  The complaints allege that the City violated both permit effluent limitations for discharges from the City's Pierce Island wastewater treatment plant and permit conditions applicable to discharges from overflow points in the City's combined wastewater collection system.

**B.   The Consent Decree**

The United States filed a proposed consent decree with its complaint.  The consent decree requires Portsmouth to take several steps to bring its wastewater treatment practices into compliance with the Clean Water Act.  For example, the decree requires Portsmouth to implement a compliance plan, develop and implement a wastewater master plan, perform combined sewer overflow facility upgrades, comply with interim emissions/effluent limits until the secondary treatment facilities achieve full operation, submit and comply with a post construction monitoring plan, and comply with reporting

requirements.  Portsmouth has already taken some of these steps. It is working toward accomplishing the others.

Two requirements are relevant to the proposed modification. Those requirements are: (1) that Portsmouth must undertake a series of projects, to be completed before October 2013, to upgrade sewer overflow facilities and reduce the frequency and volume of combined sewer overflow; and (2) that Portsmouth must submit a construction schedule for secondary wastewater treatment facilities by June 2010.  Doc. No. 8.

C.     **Proposed Consent Decree Modification**

On July 2, 2012, the United States lodged a proposed consent decree modification with the court.  A notice was published in the Federal Register on July 18, 2012, announcing the consent decree modification.  Coastal Conservation Association of New Hampshire and CLF submitted comments during the ensuing public comment period.

The proposed modification contains two main provisions. First, it extends the schedule for completion of the combined sewer overflow upgrades from October 2013 to October 2014.  The parties agreed to this modification because Portsmouth encountered unexpected geological conditions that prevented the

3

City from meeting the original construction schedule and because local budget procedures prevented the City from allocating adequate financial resources to commence secondary pilot testing.  Second, it establishes a construction schedule for the secondary treatment facilities, as required by the original decree.  The second provision is not actually a modification of the consent decree, but is instead a required addition to the original decree.  Portsmouth submitted a proposed schedule in June 2010, and, after further submissions and negotiations, the EPA, New Hampshire Department of Environmental Services ("NHDES"), and Portsmouth agreed on a construction schedule that provides for construction of secondary treatment facilities to be completed and compliance with secondary treatment limits to be achieved by May 2017.

D.   **CLF Objection**

CLF filed an objection to the United States' motion to enter the consent decree modification.  CLF does not object to either of the two main provisions of the consent decree modification. Instead, it argues that Portsmouth's past failures in complying with the Clean Water Act require the court to more closely monitor the EPA's management of the consent decree.  In

particular, it proposes that I require the parties to file quarterly reports and attend status conferences and compliance hearings.

## II. STANDARD OF REVIEW

When evaluating a proposed consent decree, the court determines whether the proposed decree is "fair, reasonable, and faithful to the objectives of the governing statute." United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990). The court does not consider whether the settlement is one the court would have reached or whether the court thinks the settlement is ideal. Id. The First Circuit has consistently recognized a strong and clear policy in favor of encouraging settlements, especially in complicated regulatory settings. See United States v. Comunidades Unidas Contra La Contaminacion, 204 F.3d 275, 280 (1st Cir. 2000); Conservation Law Found. of New England, Inc. v. Franklin, 989 F.2d 54, 59 (1st Cir. 1993); Durrett v. Hous. Auth. of City of Providence, 896 F.2d 600, 604 (1st Cir. 1990); Cannons Eng'g, 899 F.2d at 84. That policy is even stronger where the consent decree has been advanced by a "government actor 'committed to the protection of the public

interest' and specially trained and oriented in the field." Comunidades Unidas, 204 F.3d at 280 (quoting Cannons Eng'g, 899 F.2d at 84).  In reviewing a settlement involving a government agency, "the district court must exercise some deference to the agency's determination that settlement is appropriate." Conservation Law Found., 989 F.2d at 58.

Different rules apply when a party seeks to modify an existing consent decree.  Federal Rule of Civil Procedure 60(b)(5) allows a district court to modify a consent decree when it is no longer equitable that the judgment should have prospective application.

In United States v. Swift & Co., the Supreme Court held that a party seeking to modify a consent decree must make a "clear showing of grievous wrong."  286 U.S. 106, 119 (1932). Almost sixty years later, in Rufo v. Inmates of the Suffolk Cnty. Jail, the Supreme Court revisited the issue in the context of institutional reform litigation and recognized the need for "a less stringent, more flexible standard" than the standard articulated in Swift.  502 U.S. 367, 380 (1992).  In Rufo, the Court observed that a consent decree modification may be warranted "when changed factual conditions make compliance with

6

the decree substantially more onerous . . . when a decree proves to be unworkable because of unforeseen obstacles . . . or when enforcement of the decree without modification would be detrimental to the public interest." Id. at 384 (citations omitted). Rufo instructed district courts to "exercise flexibility in considering requests for modification of ... institutional reform consent decree[s]," id. at 383, because such decrees impact the public's right to "the sound and efficient operation of its institutions." Id. at 381.

Rufo established a two-prong test that a party must meet to modify a consent decree. First, the party seeking the modification must establish that a significant change in facts or law warrants revision of the decree. Id. at 383. If the moving party meets the first prong, the court considers whether the proposed modification is suitably tailored to the changed circumstances. Id. If both prongs are satisfied, the district court may approve the consent decree modification.

The First Circuit has not confined the Rufo holding to institutional reform litigation and has avoided strictly classifying cases to determine the applicable standard. Alexis Lichine & Cie v. Sacha A. Lichine Estate Selections, Ltd., 45

7

F.3d 582, 586 (1995). Instead, the First Circuit has held that the two standards should be viewed not as "a limited dualism but as polar opposites of a continuum in which we must locate the instant case." Id. On one end of the continuum are consent decrees protecting "rights fully accrued upon facts so nearly permanent as to be substantially impervious to change" (as illustrated by Swift). Id. On the other end of the continuum are decrees involving "the supervision of changing conduct or conditions and thus provisional and tentative" (as illustrated by Rufo). Id. (quoting Rufo, 502 U.S. at 379).

### III.  ANALYSIS

There are two main provisions of the proposed consent decree modification: (1) the provision extending the schedule for completion of the combined sewer overflow ("CSO") upgrades from October 2013 to October 2014; and (2) the provision establishing a construction schedule for the secondary wastewater treatment facilities. The first provision modifies the existing consent decree. The second provision does not change any provision in the existing decree. Instead, it merely fulfills a commitment that the parties made in the original

decree to submit a construction schedule for the secondary treatment facilities.  In this sense, the second provision is more like a new consent decree than a modification to an existing decree.  Accordingly, I analyze the first provision using the standard for approving a consent decree modification and the second using the standard for initially approving a consent decree.

### A. First Provision: Modifying the Completion Deadline for Sewer Overflow Upgrades

Rufo instructed district courts to exercise flexibility when considering a request to modify an institutional reform decree because such decrees "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions."  502 U.S. at 381 (quoting Heath v. De Courcy, 888 F.2d 1105, 1109 (6th Cir. 1989)).  A similarly flexible standard is appropriate in this case because public entities and the environment are involved.  Accordingly, I apply the Rufo standard in evaluating the first of the two proposed modifications.

The United States seeks to modify the consent decree by extending the schedule for sewer upgrades by one year arguing that significant changes in factual circumstances warrant

revision of the decree.  The United States offers two factual changes to justify the one-year extension: (1) Portsmouth encountered unexpected geological conditions that impaired the City's ability to meet the original construction schedule; and (2) Portsmouth's local budget procedures required the City to reallocate resources from the sewer upgrades to maximize the earliest environmental improvement.

The unexpected geological condition was that Portsmouth was required to remove a larger volume of rock than initially anticipated.  Rock removal proceeded slowly because the projects are located in densely populated neighborhoods with older homes; there are high pressure gas vaults and mains in the street; and the contractors had to remove the rocks by mechanical means instead of blasting.  The EPA reviewed the information Portsmouth provided and agreed that these geological conditions impaired Portsmouth's ability to meet the initial schedule.

Local budget procedures also required Portsmouth to redirect funds from the sewer upgrade project to the testing of secondary treatment facilities.  The EPA agreed with the City that redirecting funds from the sewer upgrade project to the testing of secondary facilities would maximize the earliest

environmental improvement and merited a change in the schedule.

These changed factual circumstances satisfy the first prong of the Rufo test.  As the Court explained in Rufo, modification is "appropriate when a decree proves to be unworkable because of unforeseen obstacles."  502 U.S. at 384.  Here, the volume of rock is an unforeseen obstacle.  CLF has not suggested that any of the parties anticipated the volume of rock later found at the sites.  Modification is also appropriate when enforcement of the decree without modification would be detrimental to the public interest.  Id.  Here, Portsmouth and the EPA agreed that, given budget constraints, it was in the environmental interest to prioritize funding secondary treatment facility testing before the sewer upgrade project.  CLF has offered no reason to question this judgment.

After finding that a change of facts occurred which merit revision of the decree, I next consider whether the proposed modification is suitably tailored to those changed circumstances.  Again, CLF offers no reason to question the suitability of the proposed modification.  "[O]nce a court has determined that a modification is warranted . . . principles of federalism and simple common sense require the court to give

11

significant weight to the views of the local government officials who must implement any modification." Id. at 393 n.14.  The EPA and Portsmouth determined that the one-year extension of the CSO mitigation schedule is suitably tailored to the changed circumstances.  The parties' view merits "significant weight" at the second prong of the Rufo analysis. See id.  I find that the proposed modification is suitably tailored to the changed circumstances.

Accordingly, I approve the modification under the Rufo standard.

### B. Second Provision: Establishing a Construction Schedule for Secondary Wastewater Treatment Facilities

The second provision of the proposed consent decree modification establishes a construction schedule for the secondary wastewater treatment facilities.  Because this provision creates additional requirements beyond those in the existing consent decree, and is therefore not actually a modification, I analyze it using the standard for approval of a consent decree.  When evaluating a consent decree, the court must determine whether the proposed decree is "fair, reasonable, and faithful to the objectives of the governing statute." Cannons Eng'g, 899 F.2d at 84.

The fairness of a proposed consent decree includes both procedural and substantive fairness. See id. at 86. To measure procedural fairness, I "look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." See id. Here, the provision establishing a construction schedule is procedurally fair because the parties negotiated it at arm's length, with adequate information and reports, and were represented by counsel. See id. A consent decree is substantively fair if it is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each P[otentially] R[esponsible] P[arty] has done." See id. at 87. The EPA determination of substantive fairness should be upheld "so long as the agency supplies a plausible explanation for it." Id. Because concepts of corrective justice and accountability are not easily quantified in environmental cases, I defer to the EPA's expertise when weighing substantive fairness. See City of Bangor v. Citizens Commc'n Co., 532 F.3d 70, 97 (1st Cir. 2008); Cannons Eng'g, 899 F.2d at 88.

The construction schedule is also reasonable.  Courts have found consent decrees to be reasonable when they provide for short- and long-term equipment improvements, detailed compliance schedules, fulfillment of contractual obligations, and reporting requirements.  See Comunidades Unidas, 204 F.3d at 281.  The court does not examine the reasonableness of the proposed consent decrees for "mathematical precision," but instead defers to the EPA's judgment on whether the consent decree is reasonable.  United States v. Davis, 261 F.3d 1, 26 (1st Cir. 2001); Cannons Eng'g, 899 F.2d at 90.  Here, the relief is tailored to redressing the injuries alleged in the complaint.  See Comunidades Unidas, 204 F.3d at 281.  The construction schedule for the secondary treatment facilities is reasonable.

Finally, the construction schedule is also faithful to the objectives of the Clean Water Act.  CLF simply points to the past delays by Portsmouth in complying with its obligations under the Clean Water Act and asserts that Portsmouth and the EPA have failed to act with the "urgency warranted by the circumstances."  Doc. No. 23-1.  The construction schedule seeks to bring Portsmouth into compliance with the Act.  The court defers to the judgment of the EPA that the consent decree is

14

consistent with the objectives of the Clean Water Act. Comunidades Unidas, 204 F.3d at 280 (finding a strong presumption in favor of entering consent decrees advanced by government agencies that are "committed to the protection of the public interest and specially trained and oriented in the field") (internal quotations omitted).  CLF has not suggested that the construction schedule is contrary to the objectives of the Act and has not provided any reason to question the EPA's judgment on this matter.

Accordingly, I conclude that the proposed construction schedule is "fair, reasonable, and faithful to the objectives of the governing statute."  See Cannons Eng'g Corp., 899 F.2d at 84.

## C. Additional Oversight Not Required at This Time

CLF proposes that I require the parties to file quarterly reports and attend status conferences and compliance hearings. I conclude that such oversight is not required at this time. The parties have not requested additional oversight and CLF does not provide sufficient justification to require additional oversight.  On its own, Portsmouth's delay in complying with the Clean Water Act before the consent decree was approved does not

justify additional oversight. There is no reason to believe that Portsmouth is unreasonably delaying compliance with the current consent decree. I deny CLF's motion without prejudice to its right to petition for greater oversight in the future if the parties seek to modify other deadlines or otherwise cause undue delay.

## IV. CONCLUSION

For the reasons set forth in this order, I approve the consent decree modification offered by the parties. Doc. No. 10-1.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

February 15, 2013

cc: Peter M. Flynn
    Mary E. Maloney
    E. Tupper Kinder
    Thomas F. Irwin