UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**United States of America, et al.**

       v.                                     Case No. 09-cv-283-PB
                                                Opinion No. 2016 DNH 172

**City of Portsmouth, New Hampshire**


**MEMORANDUM AND ORDER**

The United States has filed a motion to modify a consent decree that addresses the City of Portsmouth's failure to abide by the Clean Water Act and the New Hampshire Water Pollution and Waste Disposal Act.  The consent decree was entered in 2009 and modified in 2013.  In April 2016, the United States lodged a proposed second modification to the consent decree ("the Second Modification").  All of the parties to the consent decree support the Second Modification, and the United States moves to enter it.

A group of Portsmouth residents has intervened and objects.  I limited the residents' intervention to issues presently before the court.  The residents request that that I defer ruling on the Second Modification until they file and adjudicate a citizen suit under 33 U.S.C. § 1365(a)(1).  They also requested, and I denied, additional briefing and discovery.  They move to reconsider that denial.

1

In this Memorandum and Order, I explain why I deny the residents' motion to reconsider and grant the United States' motion to enter the Second Modification.

## I.   BACKGROUND

### A.   The Complaints

In 2009, the United States filed a complaint alleging that the City of Portsmouth ("the City") violated several sections of the Clean Water Act, 33 U.S.C. § 1251, et seq.  Doc. No. 1.  A month later, New Hampshire ("the State") intervened in the action and filed a complaint alleging that the City also violated the New Hampshire Water Pollution and Waste Disposal Act, N.H. Rev. Stat. Ann. § 485-A:13.  Doc. No. 4.  The complaints allege that the City violated both permit effluent limitations for discharges from the City's Peirce Island wastewater treatment plant and permit conditions applicable to discharges from overflow points in the City's combined wastewater collection system.

### B.   The Consent Decree

The United States filed a proposed consent decree with its complaint.  Doc. No. 2-1.  The consent decree requires the City to take several steps to bring its wastewater treatment practices into compliance with the Clean Water Act.  For

example, the decree requires the City to implement a compliance plan, develop and implement a wastewater master plan, perform combined sewer overflow facility upgrades, comply with interim emissions/effluent limits until the secondary treatment facilities achieve full operation, submit and comply with a post construction monitoring plan, and comply with reporting requirements.

**C.    First Consent Decree Modification**

On July 2, 2012, the United States lodged a proposed modification to the consent decree ("the First Modification"). Doc. No. 10-1.  The Conservation Law Foundation ("CLF") intervened and objected to the modification.  CLF did not strictly oppose the main substantive provisions of the modification.  Rather, CLF argued that the court should closely monitor the EPA's management of the consent decree.  Because the other parties did not request such oversight, and there was no reason to believe that the City's delay was unreasonable, I denied CLF's motion for greater oversight.

The First Modification contains two main provisions.  The first extends the schedule for completion of the combined sewer overflow upgrades from 2013 to 2014.  The parties agreed to this modification because the City encountered unexpected geological and financial conditions.  Applying the test governing consent

3

decree modifications, I found that changed facts merited an extension of the schedule for sewer upgrades and that the proposed schedule was suitably tailored to accommodate the changed facts.  See Rufo v. Inmates of the Suffolk Cnty. Jail, 502 U.S. 367, 383 (1992).  Accordingly, I approved the first provision.

The second main provision establishes a construction schedule for secondary treatment facilities.  This provision requires the City to complete construction of secondary treatment facilities by March 2017.  Construing this provision as an addition rather than a modification, I applied the standard governing the entrance of consent decrees.  See United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990).  Because the schedule was "fair, reasonable, and faithful to the objectives of the governing statute," I also approved the second provision.  See id.

**D.    Proposed Second Consent Decree Modification**

On April 1, 2016, the United States lodged a proposed Second Modification to the consent decree.  Doc. No. 38-1.  On April 8, a notice was published in the Federal Register soliciting public comments.  Due to a technical error, the United States extended the comment window to May 29.  The Second Modification received twenty-three comments.  Many commenters

4

were Portsmouth residents disappointed by the City's plan to locate the secondary treatment plant on Peirce Island.  After considering the comments, on June 14 the United States moved to enter the Second Modification.  Doc. No. 43.

The Second Modification was forged by the settling parties when it became clear that the City would be unable to meet its March 2017 deadline for completing construction of the secondary treatment facilities.  The Second Modification responds to this change of circumstances and contains four main provisions.

First, the Second Modification extends the deadline for substantial completion of secondary treatment facilities to December 1, 2019.  It also sets related deadlines for executing the construction contract, submitting the contractor's detailed schedule, and complying with permit limits.  Second, it seeks to hold the City accountable for any deviations from the revised timeline through a Schedule Recovery Program.  Third, it requires the City to report regularly to the EPA, the State, and CLF.  Fourth, it implements mitigation measures that are intended to counteract the pollution stemming from the City's continued violation of its national permit and its failure to meet the existing construction deadline.  The measures include enhanced primary treatment, nitrogen removal, stormwater

5

pollution reduction, expanded sewer service, and funds for related environmental projects.

On May 31, a group of Portsmouth residents filed a motion to intervene.  Doc. No. 40.  No party challenged their standing, and I permitted them to intervene for limited purposes.  Doc. No. 58.  Their intervention is restricted to the issues presently before the court: namely, the motion to approve the Second Modification.  The residents were permitted to participate in briefing in response to the pending motion, appeal from any adverse decision, and participate in regular interactions with the parties concerning the Second Modification.  The residents submitted a response and surreply.

The residents also requested additional briefing and discovery, including depositions.  On July 29, I denied their request.  United States v. City of Portsmouth, No. 09-cv-283 (D.N.H. July 29, 2016) (endorsed order).  At that time, three months had elapsed since the Second Modification was lodged, and the parties had submitted five detailed pleadings on the Second Modification.  Accordingly, given the limited scope of the residents' intervention, their submission of a response and surreply, and the importance of resolving the matter before me in a timely manner, I determined that the issues before the

court had been fully briefed.  Thus, I denied the residents' request for additional briefing and discovery.

On August 3, the residents moved to reconsider that denial. Doc. No. 63.  The United States and the City object.  The residents' motion does not discuss the legal standard governing motions to reconsider.  Rather, the residents point to an affidavit ("The Forndran Draft") that they received from their expert witness after the July 29 order had issued.  Doc. No. 63-1.  The Forndran Draft is primarily a draft evaluation of the City's planned upgrade at Peirce Island.  The residents also renew their request that I defer ruling on the Second Modification until they file and adjudicate their citizen suit under 33 U.S.C. § 1365(a)(1).

For the reasons below, I deny the residents' motion to reconsider and grant the United States' motion to enter the Second Modification.

## II.  STANDARD OF REVIEW

### A.  Standard of Review for Motions to Reconsider

A party moving for reconsideration of an interlocutory order must "demonstrate that the order was based on a manifest error of fact or law."  LR 7.2(d).  "Reconsideration of a prior order is 'an extraordinary remedy which should be used

7

sparingly.'" Walker v. Segway, 2013 WL 3104920, at *1 (D.N.H. June 18, 2013) (quoting Fabrica de Muebles J.J. Alvarez, Inc. v. Inversiones Mendoza, Inc., 682 F.3d 26, 31 (1st Cir. 2012)).  "A motion for reconsideration does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented [previously]." Id. at *1 (alteration in original) (quoting Fabrica, 682 F.3d at 31). Unless the court "has committed an error of law so obvious that it must be corrected or the movant has discovered a new fact that compels a different result, the parties must accept the court's ruling, adjust their arguments accordingly, and seek vindication on appeal." Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs, 552 F. Supp. 2d 137, 144 (D.N.H. 2008).

**B.   Standard of Review for Modification of Consent Decrees**

A district court may modify an existing consent decree when applying it prospectively would no longer be equitable.[1]  Fed. R.

---

[1] The United States analyzes the Second Modification under the legal standard for approving, rather than modifying, consent decrees.  See Doc No. 43-2 at 8-9; Cannons Eng'g Corp., 899 F.2d at 84 (asking whether proposed consent decree is "fair, reasonable, and faithful to the objectives of the governing statute").  Because the Second Modification falls within the scope of the existing consent decree, I apply the standard for modification.  See Rufo, 502 U.S. at 380 (asking whether changed factual circumstances merit modification and whether proposed modification is suitably tailored to them).  However, I would

Civ. P. 60(b)(5). In United States v. Swift & Co., the Supreme Court held that a party seeking to modify a consent decree must make a "clear showing of grievous wrong." 286 U.S. 106, 119 (1932). Almost sixty years later, in Rufo, the Supreme Court revisited the issue in the context of institutional reform litigation and recognized the need for "a less stringent, more flexible standard" than the standard articulated in Swift. See 502 U.S. at 380. The Rufo Court observed that a consent decree modification may be warranted "when changed factual conditions make compliance with the decree substantially more onerous . . . when a decree proves to be unworkable because of unforeseen obstacles . . . or when enforcement of the decree without modification would be detrimental to the public interest." Id. at 384 (citations omitted). Rufo instructed district courts to "exercise flexibility in considering requests for modification of . . . institutional reform consent decree[s]," id. at 383, because such decrees impact the public's right to "the sound and efficient operation of its institutions," id. at 381.

Rufo established a two-prong test that a party must meet to modify a consent decree. First, the party must establish that a "significant change" in facts or law "warrants revision of the

---

reach the same result if I were to apply the standard for approving consent decrees.

9

decree." Id. at 383. If the moving party meets the first prong, the court considers "whether the proposed modification is suitably tailored to the changed circumstance." Id. If both prongs are satisfied, the district court may approve the modification.

The First Circuit has not confined the Rufo holding to institutional reform litigation and has avoided strictly classifying cases to determine the applicable standard. Alexis Lichine & Cie v. Sacha A. Lichine Estate Selections, Ltd., 45 F.3d 582, 586 (1st Cir. 1995) (citation omitted). Instead, the First Circuit has held that the two standards of Rufo and Smith should be viewed not as "a limited dualism but as polar opposites of a continuum in which we must locate the instant case." Id. On one end of the continuum are consent decrees protecting "rights fully accrued upon facts so nearly permanent as to be substantially impervious to change" (as illustrated by Swift). Id. On the other end of the continuum are decrees involving "the supervision of changing conduct or conditions and thus provisional and tentative" (as illustrated by Rufo). Id. (quoting Rufo, 502 U.S. at 379).

### III. ANALYSIS

#### A. The Motion to Reconsider

A party moving for reconsideration of an interlocutory order must "demonstrate that the order was based on a manifest error of fact or law." LR 7.2(d). The residents do not discuss the legal standard governing their motion to reconsider. But their motion cannot plausibly be construed as arguing that the July 29 order "was based on a manifest error of . . . law." See id. Their motion can only plausibly be construed as claiming "a manifest error of fact." See id. Their argument fails.

The residents' motion to reconsider focuses on a document ("the Forndran Draft") that they received after the July 29 order. The Forndran Draft was written by their expert and responds to claims made by the United States' expert. It primarily assesses the location and design of the City's planned secondary treatment plant at Peirce Island.

I deny the residents' motion to reconsider for three reasons. First, both their motion and the Forndran Draft consist largely of questions. The residents do not explain why these questions establish "facts" within the meaning of the law. Moreover, the questions reflect a desire for greater information; but they do not affirmatively demonstrate a

11

"manifest error" of fact.  See id.; see also Nw. Bypass Grp, 552 F. Supp. 2d at 144.

Second, the residents do not explain why the Forndran Draft contains or analyzes facts that are truly new.  See LR 7.2(d); Walker, 2013 WL 3104920, at *1 (citing Fabrica, 682 F.3d at 31).  The Forndran Draft responds to information that was available to the residents prior to the July 29 order.  They do not justify their untimely submission of the Forndran Draft.  See id.

Third, and most significantly, the Forndran Draft does not relate meaningfully to the issue presently before me: whether to enter the Second Modification.  The Second Modification revises the construction deadline.  In contrast, the Forndran Draft bears most closely on the City's plans to locate its secondary facilities at Peirce Island.  Although it is clear that the parties contemplate the Peirce Island location, the Second Modification neither mandates that the City locate its secondary treatment plant at that site nor requires the City to select the granular engineering design details that it has.  Thus, the Forndran Draft is largely not germane to the issue before me.

For these reasons, the residents have not demonstrated that the July 29 order was based on a manifest error of fact or law.  Accordingly, I deny their motion to reconsider.

**B.     The Second Modification**

A district court may modify an existing consent decree when applying it prospectively would no longer be equitable. Fed. R. Civ. P. 60(b)(5). Rufo instructs district courts to exercise flexibility when considering a request to modify an institutional reform decree because such decrees "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions." 502 U.S. at 381 (quoting Heath v. De Courcy, 888 F.2d 1105, 1109 (6th Cir. 1989)). A similarly flexible standard is appropriate in this case because public entities and the environment are involved. Accordingly, I apply the Rufo standard in evaluating the proposed modification.

  1.   The Second Modification Is Warranted by Changed
       Factual Circumstances

A party may meet "its initial burden by showing . . . a significant change either in factual conditions or in law." Id. at 384. Here, the United States meets its burden by showing that the City is unable to meet the existing deadline due to changed facts.

The settling parties agree the City cannot meet its March 2017 deadline to construct the secondary treatment facilities. This failure is attributable to the City's effort, over the course of a year and a half, to evaluate an alternative

construction location and design at Pease Tradeport.  This evaluation process involved extensive consultation with engineering experts to examine regulatory requirements and construction issues posed by the Pease site.  After deliberation, the City determined that Peirce Island was the better choice and shifted its efforts to that location.  Evaluation of the Pease alternative had delayed the process of designing an upgrade at Peirce Island.  After consultation, the settling parties agreed that the existing deadline is unworkable, even under a twenty-four-hour construction schedule.  Accordingly, after several months of negotiation, consultation, and dispute resolution, the parties forged a proposed modification to the consent decree that would extend the deadline.

The intervening residents neither contest these changed factual circumstances nor argue—apart from a fleeting reference— that the first Rufo prong is not satisfied.

The Supreme Court has explained that modification is appropriate "when changed factual conditions make compliance with the decree substantially more onerous."  Id.  Here, meeting the existing construction deadline is not only substantially more onerous; it is virtually impossible.  See id.  No party argues that the significant delay in construction was easily

14

foreseeable or avoidable.  See id. at 385.  Further, "enforcement of the decree without modification would be detrimental to the public interest."  See id. at 384-85.  If the consent decree were not modified, pollution of the Piscataqua River and Great Bay Estuary would continue unmitigated.  A consent decree modification would lessen these continuing environmental harms.  More permanently, modification would ensure the timely completion of a secondary treatment facility, which is critical to the health of the polluted waters.  Denying a modification would spawn protracted litigation among the parties, with no feasible construction schedule and the City's unmitigated pollution continuing daily.  That result would be detrimental to the public interest.

Accordingly, I conclude that significant factual changes warrant a modification of the consent decree.  See id. at 383.  The first Rufo prong is satisfied.

2. The Second Modification Is Suitably Tailored to the Changed Factual Circumstances

After finding that a change of facts has occurred that merits revision of the decree, I next consider whether the proposed modification is suitably tailored to the changed circumstances.  "[O]nce a court has determined that a modification is warranted . . . principles of federalism and simple common sense require the court to give significant weight

15

to the views of the local government officials who must implement any modification." Id. at 393 n.14.

The City's view merits "significant weight" at this stage of the Rufo analysis. See id. And that view is reinforced by the support of the United States, the State, and CLF. These parties reflect a balance of concerns: the federal government and the agency dedicated to environmental interests; the State and its citizens; a prominent nongovernmental environmental group; and the City and its elected representatives, who are responsible for implementing the decree and harmonizing the competing interests of Portsmouth residents. Together, these parties are well-situated to forge a solution. And they have done so. They agree that the extended construction schedule—along with reporting, schedule recovery, and mitigation requirements—is suitably tailored to address the changed facts.

Now, in the eighth year of this litigation, and after years spent evaluating secondary treatment sites, a group of Portsmouth residents has intervened. They are concerned that construction at Peirce Island would disrupt life, commerce, and historic buildings in Portsmouth. They are also concerned that a Peirce Island plant would lack adequate capacity. But they largely express these concerns through questions reflecting a

desire for greater information, rather than affirmative demonstrations.

More fundamentally, the residents' primary concerns and arguments reach beyond the scope of their limited intervention in this action. I have restricted the residents' participation to issues that are presently before me. Thus, it is crucial to note that the Second Modification neither mandates that the City locate a secondary treatment plant at Peirce Island nor requires the City to select the granular engineering design details that it has. Thus, the residents' arguments largely fall outside the scope of their limited intervention.[2]

I conclude that the Secondary Modification is reasonable. The City cannot meet the existing deadline, and its daily pollution must be mitigated promptly. Past delays do not lessen the need for timely action; they heighten it. The Second Modification sets a reasonable deadline for construction and ensures that it is carried out in a timely and transparent manner. The Second Modification also holds the City accountable in the interim through mitigation requirements. The settling

---

[2] In their filings, the residents repeatedly reference a potential citizen suit, which they have not yet filed, under 33 U.S.C. § 1365(a)(1). All of the parties agree that the entrance of the Second Modification does not, on its own, bar the residents from bringing such a suit or challenging the decision to locate the secondary treatment facility on Pierce Island.

17

parties agree that these provisions are suitably tailored to the circumstances that have occurred since the First Modification. I must give weight to that position. See id. To the extent that the intervening residents' arguments fall within the scope of their intervention, they have not persuaded me to reach a different conclusion.

I conclude that the Second Modification is suitably tailored to the changed circumstances. See id. at 383. Thus, both prongs of the Rufo test are satisfied. I grant the United States' motion to enter the Second Modification.

## IV.  CONCLUSION

For the reasons set forth in this order, I deny the residents' motion to reconsider, Doc. No. 63, and I grant the United States' motion to approve the consent decree modification.  Doc. Nos. 43, 38-1.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


September 28, 2016

cc:  David Lee Gordon, Esq.
     Peter M. Flynn, Esq.
     Kevin A. Brooks, Esq.

Arthur B. Cunningham, Esq.
Michael J. Quinn, Esq.
Bruce W. Felmly, Esq.
E. Tupper Kinder, Esq.
Suzanne M. Woodland, Esq.
Thomas F. Irwin, Esq.